The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Amy L. Pfeiffer, the briefs and arguments on appeal and the additional evidence submitted by the parties on 29 March 2000. The appealing party has shown good ground in part to reconsider the evidence of record. Having reconsidered the entire evidence of record, the Full Commission reverses in part and affirms in part the Deputy Commissioners holding and enters the following Opinion and Award.
 ***********
An interlocutory order by Deputy Commissioner Pfeiffer, which is incorporated by reference into this Opinion and Award, was filed on 28 January 1999. This order held that defendant was to compensate plaintiff retroactively for her more favorable remedy, that of temporary partial disability benefits, from 22 March 1998 through the present and continuing.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a pretrial agreement and at the hearing on 22 January 1999 as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, and the Industrial Commission has jurisdiction of the parties and the subject matter of this claim.
2. The parties have been correctly designated, and there is no question of misjoinder or non joinder of the parties.
3. On 27 May 1993 defendant-employer employed more than three employees. Defendant-employer and its employees were bound by and subject to the provisions of the North Carolina Workers Compensation Act.
4. On 27 May 1993 there existed an employer-employee relationship between defendant and plaintiff.
5. On 27 May 1993 defendant was self-insured for workers compensation purposes, with Constitution State Services Company acting as its servicing agent.
6. On 27 May 1993 plaintiff was an assembly technician for the employer, earning an average weekly wage of $496.80, which yields a compensation rate of $331.22.
7. Plaintiff was paid temporary partial disability benefits as a result of her compensable occupational disease.
8. Plaintiff returned to full-time employment as of 22 March 1998.
9. At the hearing before the Deputy Commissioner, the parties indicated they would submit stipulated medical and employment records. These records were not received by the Deputy Commissioner prior to the of filing of her Opinion and Award.
10. The facts in this matter are not in dispute. In addition, it is undisputed that plaintiff is entitled to additional temporary partial disability benefits. The issue raised in this hearing involves the commencing and expiration dates of the statutory 300 week period of G.S. 97-30, and whether the statutory 300 week period was tolled.
 ***********
Based upon the entire record of evidence, the Full Commission enters the following:
 FINDINGS OF FACT
1. On 1 February 1994, while employed by defendant-employer, plaintiff contracted dermatitis, an occupational disease, due to exposure to chemicals. This occupational disease was the subject of plaintiffs claim in I.C. No. 567338. Her claim in I.C. No. 567338 was settled through a Compromise Settlement Agreement that was approved by the Commission on 24 September 1994.
2. The present case, I.C. No. 421506, involves plaintiffs claim for occupationally-induced asthma. As is indicated in the Stipulations, through the Pre-Trial Agreement, defendant accepted the compensability of plaintiffs claim. However, no Industrial Commission Form 21 Agreement for Compensation was approved by the Industrial Commission to memorialize this acceptance.
3. As a result of her compensable occupational disease, plaintiff was unable to work in any capacity for any employer for approximately four weeks beginning on 27 May 1993. From 27 May 1993 through 25 June 1993, plaintiff was paid her full salary through a salary continuation plan.
4. In late June 1993, plaintiff returned to work for defendant in an office position that allowed her to work in an environment free from the chemicals that triggered her compensable occupational disease. Aside from a two week period during which plaintiff was paid her normal salary through defendants salary continuation plan, plaintiff continued working for defendant in this position earning her pre-injury average weekly wage until 4 November 1994.
5. Subsequent to 4 November 1994, plaintiff was unable to continue working for defendant and did not work in any capacity for any employer until 19 May 1995. For the initial three months following 4 November 1994, plaintiff received her full salary through defendants salary continuation plan. Thereafter, plaintiff received seventy-five percent of her salary through this plan for an additional two months.
6. On 19 May 1995, plaintiff obtained employment with the city of Rocky Mount. Because plaintiff earned less than her pre-injury average weekly wage in this position, defendant paid plaintiff temporary partial disability compensation from 19 May 1995 through 28 July 1995.
7. On 28 July 1995, plaintiffs employment with the city of Rocky Mount ended. From 28 July 1995 through 17 February 1998, plaintiff was again unable to earn wages in her former position with defendant or in any other employment as the result of her occupational disease. Accordingly, plaintiff was paid temporary total disability compensation by defendant during the period of 28 July 1995 through 17 February 1998.
8. On 17 February 1998, plaintiff returned to work at a jewelry store earning less than her pre-injury average weekly wage. Because of her diminished earnings capacity, defendant paid plaintiff temporary partial disability compensation from 17 February 1998 through 22 March 1998. No indemnity compensation has been paid by defendant since 22 March 1998.
9. On 19 May 1998 plaintiff obtained employment as an income assistance case worker with the Department of Social Services in Edgecombe County earning less than her pre-injury average weekly wage. As of the date of the hearing before the Deputy Commissioner on 22 January 1999, plaintiff remained employed in this capacity.
10. Mistakenly believing that an Industrial Commission Form 21 Agreement had been approved, in April 1998 defendant tendered to plaintiff a Form 26 Supplemental Agreement for Compensation through which it agreed to pay plaintiff temporary partial disability benefits in various amounts from 17 February 1998 through 25 February 1999. On the Form 26 in question, defendant contented that the 300 week statutory period for temporary partial disability benefits would have expired on 25 February 1999. However, defendant now contends that plaintiffs partial benefits would have expired as of 2 March 1999. Defendant uses 27 May 1993 as the commencement date for the 300 week statutory period.
11. Plaintiff refused to sign the Form 26 agreement, contending that her entitlement to temporary partial benefits extended for several months beyond either the February or March 1999 date. The Form 26 agreement was not forwarded to, and consequently has not been approved by the Commission.
12. Based upon the evidence of record, plaintiff has not been assigned any permanent partial disability rating as the result of her occupational disease.
13. Absent a rating for permanent partial disability, the more favorable remedy for plaintiff is to receive temporary partial disability compensation.
14. Although, in their Pre-Trial Agreement, the parties stipulated that plaintiff sustained her occupational disease on 27 May 1993, this is not controlling regarding the determination of the "date of injury or the period of plaintiffs temporary partial disability pursuant to G.S. 97-30.
15. This case involves an occupational disease, rather than an injury by accident for which the "date of injury is obvious and easily determined. In the present case, pursuant to the medical evidence of record, plaintiff was not notified by a competent medical professional that her asthma and rhino sinusitis had been caused by or aggravated by her employment with defendant until 6 April 1994. Accordingly, the "date of injury for plaintiff was 6 April 1994 and it is from that date that the statutory 300 week period under G.S. 97-30 began to run.
16. Plaintiffs disability sustained as the result of her occupational disease began on 4 November 1994, the date upon which she first received less than her pre-injury wage level.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The "date of injury for plaintiffs occupational disease was on 6 April 1994. G.S. 97-30.
2. Plaintiffs disability as the result of her occupational disease began on 4 November 1998. G.S. 97-2(9).
3. In this case, the 300 week statutory limitation for temporary partial disability benefits commenced on 6 April 1994, the date upon which plaintiff was notified by a competent medical professional that her asthma and rhino sinusitis had been caused by or aggravated by her employment with defendant. G.S. 97-2(9).
4. Defendant is entitled to a credit towards the statutory 300-week period for the period of time that plaintiff received through the employers salary continuation plan her full salary and seventy-five percent of her salary. G.S. 97-30; G.S. 97-42.
5. The applicable statute dictates that a claimant receive a maximum of 300 weeks of temporary partial disability compensation from the "date of injury, deducting any periods of total disability. G.S. 97-30. No exception is made in the statute for tolling the 300-week limitation during periods the claimant is able to work or otherwise receive their pre-injury wages. Id.
6. Plaintiff was entitled to receive temporary partial disability compensation as of 6 April 1994, with her actual period of disability commencing on 4 November 1994 and continuing for a maximum of 300 weeks from 6 April 1994. G.S. 97-30. Plaintiff is not entitled to temporary partial disability benefits during periods she received total disability compensation and periods that she received her salary through the employers salary continuation plan. Id.; G.S. 97-29; G.S. 97-42.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses in part and affirms in part the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay to plaintiff temporary partial disability compensation at the rate of two-thirds the difference between her average weekly wage at the time of her injury and the wages she was able to earn on weekly basis from 28 May 1998 through end of the statutory 300 week limitation. Having accrued, this compensation shall be paid to plaintiff in a lump sum, subject to the credit and attorneys fee approved herein.
2. Defendant is entitled to a credit towards the statutory 300-week period for the period of time that plaintiff received through the employers salary continuation plan her full salary and seventy-five percent of her salary.
3. A reasonable attorneys fee of twenty-five (25%) percent of the compensation awarded to plaintiff is approved for counsel for plaintiff. The compensation having accrued, this fee shall be deducted from the amount due plaintiff and paid directly to counsel for plaintiff.
4. Defendant shall pay the costs of this proceeding.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
S/_______________ DIANNE C. SELLERS COMMISSIONER